115 So.2d 764 (1959)
Terryss BUCK and L.G. Buck, her husband, Appellants,
v.
Curtis McLEAN, J.G. Bruce, and J.J. Nichols, Individually, and as members of and constituting the Control Committee of the "Apalachicola Memorial Stadium," Franklin County, Florida, a political subdivision of the State of Florida, the Board of Public Instruction of Franklin County, Florida, a public corporation, and City of Apalachicola, a municipal corporation, Appellees.
No. B-125.
District Court of Appeal of Florida. First District.
October 8, 1959.
Rehearing Denied November 3, 1959.
*765 Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, for appellants.
Shuler & Shuler, McLeod & McLeod, C.H. Bourke Floyd, Apalachicola, and James Messer, Jr., Tallahassee, for appellees.
WIGGINTON, Chief Judge.
Appellants husband and wife sued The Board of Public Instruction of Franklin County, Florida, and others, for injuries sustained by wife while a paying spectator at a high school baseball game. The contest was being played on an athletic field owned by the School Board and operated as a facility of the public school system of Franklin County. The complaint alleges that defendants negligently permitted a protective wire screen between the grandstand and playing field to deteriorate as a result of which a foul ball came through a hole in the screen striking plaintiff in the eye and causing serious damage. From a summary judgment entered in favor of all defendants plaintiffs have appealed.
By memorandum decision filed in support of the summary judgment, the trial court held that although the complaint states a cause of action against the School Board, the latter is immune from liability for tort and the action is therefore not maintainable.
The crucial question presented for decision is whether a county school board may be held liable in tort for injuries sustained by a paying spectator as a result of negligence in the maintenance of an athletic stadium owned by the Board and constituting a part of the public school plant which was being used at the time of injury for a high school interscholastic baseball game.
The immunity of the State from suit is absolute and unqualified and the constitutional provision securing it is not to be so construed as to place the State within reach of the court's process.[1] County boards of public instruction are agencies of the State and as such are clothed with the same degree of immunity from suit as is the State.[2] They are the creatures of the Constitution, constituted as quasi corporations for the purpose of exercising under legislative authority such part of the governmental powers of the State as the law confides in them. In short, county school boards are part of the machinery of government operating at the local level as an agency of the State in the performance of public functions. The character of their functions, and the extent and duration of their powers rests exclusively in the legislative discretion. Their powers may be enlarged, diminished, modified or revoked, and their acts set aside or confirmed, at the pleasure of the legislature.
In recognition of the doctrine of sovereign immunity from liability of every *766 kind our Constitution permits suit to be brought against the State only as to such liabilities for which provision is made by general law.[3]
Appellants contend that the Florida Legislature has made provision by general law for bringing suits against county school boards by the enactment of F.S. Section 230.22, F.S.A., which permits county boards of public instruction to sue as well as to exercise other powers enumerated in the statute. This question has been answered adversely to appellant's contention by our Supreme Court in the Bragg case.[4] when it held that the mere fact a board of public instruction is created as a body corporate with power to sue and be sued does not affect its immunity from tort. In addition, our Supreme Court has expressed grave doubt as to whether an act of the legislature could validly authorize the bringing of actions ex delicto against county school boards without amending the Constitution.[5] This ruling is predicated upon the requirement of the Constitution that school funds be disbursed solely for the support and maintenance of public free schools, and the provision prohibiting the enactment of any law authorizing the diversion of school funds to any other than school purposes.[6]
Appellants argue with considerable force that modern judicial thinking has rejected the doctrine of sovereign immunity, and the pronounced trend is to permit the maintenance of tort actions against units and agencies of government. In support of this proposition they point to the Suwannee County Hospital Corporation decision[7] by our Supreme Court which they interpret as holding that a paying patient in a county hospital is entitled to the same protection and redress for wrong against a county as if the hospital were privately owned and operated. It is urged that this decision is authority for the proposition that a county, even though a political subdivision of the state, is no longer immune from liability for torts committed by its agents or employees in the performance of their duties. A careful review of the cited decision does not lead up to the conclusion reached by appellants. We first point out that the defendant in the Suwannee case was a hospital district created by special act of the legislature, and not the county itself. The district was constituted a corporation charged with the duty of constructing, maintaining and operating a hospital for the treatment of paying patients, as well as the indigent. Our Supreme Court held that the corporation was engaged in a proprietary function exactly to the same extent as privately owned hospitals. Implicit in the court's opinion is the conclusion that defendant neither possessed any of the attributes nor discharged any of the functions of sovereignty. In its decision the Court commented upon its former decision in the Bragg case, wherein it held that boards of public instruction were engaged in governmental functions and not subject to actions in tort. In distinguishing the rule in Bragg from that in the case then under consideration, the opinion was careful to state that the court saw no fundamental similarity between a hospital and a school system. It further commented that institutions such as Suwannee County Hospital Corporation are not a part of any statewide system maintained at public expense, so all who become afflicted, may, regardless of their individual worth, have the advantages of professional nursing, medical attention, and modern scientific apparatuses without cost to them. Had the contrary been true, the opinion indicates *767 that the corporation would have been considered a state agency, discharging a governmental purpose, and therefore immune from tort liability just as are counties and county boards of public instructions.
Our interpretation of the Suwannee County Hospital decision is not affected by the later decision of our Supreme Court in the Bourgeois case.[8] In Bourgeois action in tort was brought against Dade County for damages resulting from negligence in the care and treatment of plaintiff's decedent while receiving treatment in the emergency ward of the county hospital. Our Supreme Court held that the proof of negligence was sufficient to create a jury question, and the trial court committed error in directing a verdict for defendant county. In so deciding, however, the Court specifically pointed out that it had not discussed the question of liability vel non of a county in an action of that kind for the reason that such question was not raised nor argued on appeal.
Appellants insist that the decisions of our Supreme Court in Bragg and Richter have been receded from and overruled by its decision in Hargrove.[9] With this contention we cannot agree. The Hargrove case involved a tort action against the Town of Cocoa Beach, a municipal corporation. In holding that under the doctrine of respondeat superior a municipal corporation may be liable in tort for the negligent act of its police officer whether committed in the discharge of a governmental or proprietary function, the court receded from its former decisions holding to the contrary. There is nothing in this decision which says, or from which it can be reasonably inferred, that the rule there announced is likewise applicable to the State of Florida, or its several counties and boards of public instructions. The broad and well defined distinction between a municipal corporation on the one hand, and a county or other agency of the State on the other, was ably discussed by our Supreme Court in the Keggin case.[10] The reason why the former is liable in tort for the negligent acts of its employees, while the latter has always been held immune from such liability, is clearly explained. We therefore do not consider that the decision in Hargrove was intended to or in fact constitutes a departure from the settled principle that county boards of public instruction in Florida are immune from liability for tort. Since the rule of immunity accorded county school boards is based equally upon the doctrine of sovereignty and the prohibitory provisions of the State Constitution, it matters not whether the negligent act is committed while in the performance of a governmental or a proprietary function.
As additional authority for the proposition that county school boards are not immune from liability for torts committed by their agents or employees while in the performance of a corporate or proprietary function, appellant refers us to the case of Hoffman decided in 1949 by a district court in Pennsylvania,[11] and Sawaya decided in 1955 by the Supreme Court of Arizona.[12] To these may be added the case of Molitor decided by the Supreme Court of Illinois on May 22, 1959,[13] which extends the rule by withdrawing from county school districts immunity from tort liability for the negligent acts of their employees even when committed in the performance of governmental functions. We have carefully studied the cited decisions and in all frankness must agree that they *768 are solid support for the position which appellants here take. They completely discredit and repudiate the ancient doctrine of sovereign immunity and reject as unsound the several reasons relied upon by our Supreme Court for the settled rule which immunizes county school boards against liability for torts committed by their agents or employees. We are compelled to the view, however, that such conflict in judicial opinion does not in any manner alter the established law of this jurisdiction.
We share the wonderment expressed by Mr. Justice Thomas in Suwannee County Hospital as to when the entry of government into businesses as well and as readily operatable by private enterprises will cease. Courts are not blind to the many instances within the personal knowledge of their members where departments and agencies of the State, as well as counties and local school boards, are engaged in activities which by any reasonable standard must be considered corporate and proprietary in nature. In so doing they are directly competing with private business in fields which could and in most instances are better served by the latter. It is a harsh doctrine indeed which leaves one without remedy for wrong suffered by him through the negligence of a state agent or employee committed while performing a proprietary function, but under similar circumstances imposes liability on everyone else engaged in the performance of similar functions.
Regardless of our personal views, we feel that a proper administration of justice invites respect for the admonition of Alexander Hamilton, who once wrote that courts "must declare the sense of the law; and if they should be disposed to exercise Will instead of Judgment, the consequences would equally be the substitution of their pleasure to that of the legislative body." If, therefore, a change in the long established rule of immunity prevailing in this State is to be made, it must come as it did in the States of New York, Washington and California either by constitutional amendment, or by enactment of appropriate legislation, or both.
We have considered the remaining points on appeal as supported by the assignments of error, but conclude that appellant has failed to clearly demonstrate that the trial court committed reversible error in entering the summary judgment from which this appeal is taken.
Affirmed.
STURGIS and CARROLL, DONALD, JJ., concur.
NOTES
[1] Hampton v. State Board of Education, 90 Fla. 88, 105 So. 323, 42 A.L.R. 1456.
[2] Bragg v. Board of Public Instruction of Duval County, 160 Fla. 590, 36 So.2d 222.
[3] "Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating." Florda Constitution, Art. III, Sec. 22, F.S.A.
[4] See Note 2.
[5] Richter v. Board of Public Instruction of Dade County, Fla. 1957, 91 So.2d 794.
[6] Florida Constitution, Art. XII, Sections 9 and 13.
[7] Suwannee County Hospital Corp. v. Golden, Fla. 1952, 56 So.2d 911.
[8] Bourgeois v. Dade County, Florida, Fla. 1957, 99 So.2d 575.
[9] Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193.
[10] Keggin v. County of Hillsborough, 71 Fla. 356, 71 So. 372.
[11] Hoffman v. Scranton School District, 67 Pa.Dist. & Co.R. 301, 304.
[12] Sawaya v. Tucson High School District No. 1, 78 Ariz. 389, 281 P.2d 105.
[13] Molitor v. Kaneland Community Unit District No. 302 Ill. 163 N.E.2d 89.