**A. J. CLEARY v. DADE COUNTY, FLORIDA,** a political subdivision of the State of Florida, et al.

37 So. (2nd) 248                                          June Term, 1948
October 19, 1948                                          Special Division B

*Loftin, Anderson, Scott, McCarthy & Preston* and *Tyrus A. Norwood* for appellant.

*J. W. Watson, Jr.,* for City of Miami, and *Hudson & Cason* and *G. M. McNutt* for Dade County, appellees.

HOBSON, J.:

We have before us an appeal by A. J. Cleary, plaintiff below, wherein and whereby he seeks to review an order of the Circuit Court of the Eleventh Judicial Circuit which order was one dismissing his bill of complaint. The appellant, in and by said bill of complaint, sought to enjoin the City of Miami from transferring property known as Jackson Memorial Hospital, and from executing a deed thereto, to Dade County, Florida. He further attempted to enjoin said County from accepting said deed and property and operating the same as a hospital as proposed and contemplated by Resolution unanimously passed by the City Commissioners of the City of Miami.

The agreement to convey said hospital property to Dade County, which was made and entered into by and between the City of Miami and the Board of County Commissioners of Dade County, provides, among other things, that the County shall continue with the operation of said hospital and hospital facilities and shall "provide for, take care of and accept full responsibility for the care of the sick, and indigent, and all charities and welfare cases" of all of Dade County, including the City of Miami. In addition thereto, Dade County agrees to assume existing indebtedness of the hospital and agrees, subject to a referendum, to make extensive additions and improvements. This agreement contains a reverter clause, viz:

"In the event the County fails to operate a hospital on said premises or on other premises within Dade County offering comparable hospital facilities, the above described property and facilities shall revert to the City."

The appellant challenges the transfer of Jackson Memorial Hospital from the City to the County upon four grounds. First, he contends that the City may not legally

transfer said property to the County in the absence of specific legislative authority and suggest that no such authority exists. In the second place, he asserts that the charter of the City of Miami expressly forbids the sale of any of its public properties except by an ordinance adopted by an affirmative vote of four-fifths (4/5) of the members elected to its City Commission and that the City, therefore, may not authorize a transfer of the hospital property by resolution, as was attempted in this instance. His third objection is that the City is undertaking to make this transfer, or sale of its property without advertising for sealed bids as is required by a City Ordinance which provides that all contracts for more than $5,000.00 shall be advertised at least once in a newspaper of general circulation in the City calling for sealed bids to be received by the Commission on a date not earlier than ten days from the date of its publication. The final fault which he finds with this transaction is that the City is endeavoring to delegate its power and duty to provide for the care, support and maintenance of sick, aged, insane or indigent persons to the County of Dade.

The answer to the appellant's first objection is found in the City Charter of the City of Miami in Section 3(f), which provides as follows:

"To acquire by purchase, gift, devise, condemnation or otherwise, property real or personal, or any estate or interest therein, within or without the city and for any of the purposes of the city, and to improve, sell, lease, mortgage, pledge *or otherwise dispose of the same* or any part thereof."— (Underscoring supplied).

Counsel for both appellant and appellees agree that this proposed transfer is not a sale; the former contends that it cannot be a sale because there is no consideration flowing from the vendee to the vendor. On the other hand, the appellee's counsel assert that it is not a sale because it is merely a transfer by one governmental agency to another of the hospital and its facilities which properties will be operated and maintained after the transfer by the transferee, to-wit: the County, which is fully capable and duly qualified under the

law to assume the responsibility of operating the hospital for the benefit of all of the people of Dade County, in which the City of Miami is located. Clearly, this is not an ordinary run-of-the-mill sale of real property. It is a transfer of the assumed responsibility for the operation of the hospital from one governmental unit which derives all of its power and duties, indeed its very existence, from the State acting through its legislative body, to a governmental agency which is merely an arm of the State Government and which is charged by statutory law and Constitution of Florida with the obligation of caring for the sick, aged, or indigent persons who live within its borders. If this were a sale in the ordinarily accepted sense of the word, we find that it should not be condemned for want of consideration. There is ample consideration flowing to the City in that the County by taking over full responsibility for the operation of the hospital will relieve the City of an annual deficit which has averaged over the last five years, One Million Dollars per year, and in the making of valuable improvements and additions to said property. There is no suggestion of fraud or bad faith in connection with this transaction. We hold that there is ample authority for the proposed transfer in Section 3(f) of the City Charter in the language "or otherwise *dispose* of the same." (Underscoring supplied).

In the case of State v. City of Miami, 150 Fla. 270, 7 (2nd) So. 146, this Court approved an agreement between the City of Miami and the County of Dade as being authorized by law, which agreement, although less direct and more complicated and involved than the present arrangement, nevertheless, had as its ultimate purpose the conveyance of this same hospital property to the County. See also Hickey v. Burke, 78 Ohio App. 351, 69 N.E. (2nd) 33; City and County of San Francisco v. Boyle, 191 Cal. 172, 215 Pac. 549.

With reference to the appellant's second objection we hold his contention that the hospital property here in question is a public place within the meaning of Section 73 of the Charter of the City of Miami is not well taken. We quote said section as follows:

"No right, title or interest of the City of Miami or any part thereof, in and to the water front, wharf property, public landings, wharves, docks, streets, avenues, parks, bridges and other public places and its gas, water, electric and other works, shall be sold except by authority of an ordinance passed by a recorded affirmative note of four-fifths (4/5) of all the members elected to the commission, and under such other restrictions as may be imposed by law."

Under the doctrine of ejusdem generis the words "other public places" are limited by the words "the water front, wharf property, public landings, wharves, docks, streets, avenues, parks, bridges" which immediately precede that phrase. It is clear from a reading of the City Charter that it was not intended to extend the provisions of Section 73 of said Chapter to include all public places or property by use of the words "other public places." On the contrary, the enumeration of specific properties followed by the general words or phrase "other public places" was intended to connote properties of the same kind. Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345.

The third contention of appellant is without merit. An examination and careful consideration of Section 30 of Chapter 2 of the Code of the City of Miami discloses that it has reference to contracts involving personal property and services and to purchases of personalty, but has no connection whatsoever with contracts for or the sale or purchase of real property. Furthermore, this is not a purchase by the City nor is the agreement before us actually a contract for more than $5,000.00; certainly it is not within the intendment of Section 30 of Chapter 2 of the Code.

The appellant's fourth objection to this agreement to transfer the hospital property from the City of Miami to the County of Dade is predicated upon the assumption that the City will delegate or attempt to delegate its authority and duty to provide for the care, support and maintenance of sick, aged, insane, or indigent persons to the County. Section 3(e) of the Charter of the City of Miami provides as follows:

"The City of Miami shall have the power to provide for the care, support and maintenance of the orphan, dependent, delinquent or defective children, and of sick, aged, insane or indigent persons."

This section of the charter empowers or authorizes the City "to provide for the care, support and maintenance . . . of sick, aged, insane or indigent persons" and does not expressly make same an oblightion or duty of the City. On the other hand, paragraph 4 of Section 125.01 Florida Statutes Annotated, in defining the powers and duties of the Board of County Commissioners recites: "to have care and provide for the poor and indigent people of the County." It may be said that since the City has seen fit to exercise the power granted to it in Section 3 (e) of its Charter it assumed the duty of continuing such care, support and maintenance. Whether this is a duty resting upon the City or merely a power, appellant contends that the City cannot delegate this power or divest itself of this duty. The reply to such contention is that by the proposed transfer the City is not attempting to delegate its power to or impose its duty upon the County. The County needs no delegation of such power. It has both the authority and the duty to care for the indigent, sick and poor in all of Dade County by virtue of the statute above referred to and by the provisions of Section 3 of Article XIII of the Constitution of Florida, which reads as follows:

"Section 3. The respective counties of the State shall provide in the manner prescribed by law for those of the inhabitants that, by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society."

It is clear that since the County has both the prerogative and obligation to care for the infirm and aged within the entire County, it is unnecessary that such power and duty be delegated to it by the City.

It is our conclusion that the execution of the agreement now before the Court between the City of Miami and the County of Dade is fully authorized by law and that the people of the City of Miami and of Dade County as a whole will bene-

fit from a transfer of the hospital, its facilities and its operation to the jurisdiction of Dade County.

The order of the Circuit Court of the Eleventh Judicial Circuit dismissing appellant's bill of complaint should be and it is hereby affirmed.

THOMAS C. J., CHAPMAN and ADAMS, JJ., concur.