408 So.2d 615 (1981)
MIAMI MARINAS ASSOCIATION, INC., a Florida Corporation, Appellant,
v.
The CITY OF MIAMI, a Florida Municipal Corporation, Appellee.
No. 80-1963.
District Court of Appeal of Florida, Third District.
December 15, 1981.
Rehearing Denied February 3, 1982.
Thomas, Kraft & Raab, Joel V. Lumer, Miami, for appellant.
George F. Knox, Jr., City Atty. and Mikele S. Carter, Asst. City Atty., for appellee.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
BASKIN, Judge.
Miami Marinas, Inc., a corporation formed to bid for the contract to manage Dinner Key Marina, appeals from two orders relating to the City of Miami's selection of a management firm. In the first order, the court ruled that the City had complied with charter provisions pertaining to the method of selecting a firm to manage waterfront property contained in section 3(f)(ii)(d).
In the second order,[1] the trial court ruled that the City had failed to comply with charter provision 3(f)(ii)(b) in that it failed to obtain two appraisals indicating the contract would result in a fair return. The court declined to restrain the City from entering the agreement and found that the City might still obtain the second appraisal.
We are asked to determine whether the Charter of the City of Miami permits the City to award a waterfront property management contract through competitive negotiation instead of through the competitive bidding process. We hold that the City of Miami was required to select its waterfront management company through competitive bidding, and we reverse the trial court's decision.
Section 3 of the Charter of the City of Miami states:
The City of Miami shall have power:
... .
(f) Acquiring and disposing of property:

... .
(ii) Anything in this Charter or the ordinances of the City of Miami to the *616 contrary notwithstanding, the city shall not lease to or contract with private firms or persons for the commercial use or management of any of the city's waterfront property:
(a) under terms and conditions which prevent reasonable public access to the water or public use of such property; or
(b) which does not result in a fair return to the city based on two (2) independent appraisals; or
(c) for use not authorized under the then-existing master plan of the City of Miami; or
(d) without competitive bid or competitive negotiations in accordance with procedures established by the Florida Professional Competitive Negotiations Act.
Competitive bidding and competitive negotiation are different methods for selecting from offers to furnish goods or services. When competitive bidding procedures are employed, selection is based upon a comparison of sealed bids submitted pursuant to published notice inviting bids. In Florida, competitive bidding is the method required to be used by a state or municipal agency when it purchases commodities priced in excess of $2,500, section 287.062, Florida Statutes (1979), or, under the City of Miami code, amounting to more than $4,500. The Code of the City of Miami, Florida (Code 1967, § 18-54).
An agency may engage in competitive negotiation to obtain certain professional services at "fair, competitive, and reasonable" compensation by negotiating separately with the three best qualified firms commencing with the most qualified and proceeding in the order of qualification to the other two firms. § 287.055, Fla. Stat. (1979); The Code of the City of Miami, Florida (Code 1967, § 18-77.2). The statutory and code definitions of professional services to which competitive negotiation applies are architecture, professional engineering, landscape architecture, and registered land surveying. § 287.055(2)(a), Fla. Stat. (1979); The Code of the City of Miami, Florida (Code 1967, § 18-76). A waterfront property management contract is not among the defined professional services of either the statute or code.
Turning to existing case law, we find that in Glatstein v. The City of Miami, 399 So.2d 1005 (Fla.3d DCA 1981), we reversed a trial court's finding that competitive bidding for the Watson Island Development Management Contract was unnecessary. We observed in Glatstein that bids on "sufficiently detailed and specific plans ... promote intelligent and competitive bidding as envisioned by the city charter... . The management aspects of the contract should be subject to competitive bidding requirements."
Appellee calls to our attention those cases which hold that contracts for leases of real property are immune from competitive bid requirements when they do not involve the expenditure of city funds. Mahoney v. Givens, 64 So.2d 926 (Fla. 1953); Grove Key Marina, Inc. v. Sakolsky, 383 So.2d 695 (Fla.3d DCA 1980). We reject appellee's contentions because we believe the leases considered are distinguishable from the management contract which we here consider with regard to the expenditure of funds.
Statutes enacted for the public's benefit should be interpreted in a manner most favorable to the public. Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969). Competitive bidding statutes are enacted for protection of the public, Hotel China & Glassware Co. v. Board of Public Instruction of Alachua County, 130 So.2d 78 (Fla. 1st DCA 1961), cited in Marriott Corporation v. Metropolitan Dade County, 383 So.2d 662 (Fla.3d DCA 1980), and should be construed in a manner to avoid their circumvention. Wester v. Belote, 103 Fla. 976, 138 So. 721 (Fla. 1931).
Although the trial court found that the City complied with section 3(f)(ii)(d) pertaining to competitive negotiations, we must reverse the trial court's decision because we hold that the City was required to *617 make its selection upon review of competitive bids.
We therefore reverse the trial court's order denying injunctive relief and remand the cause for further proceedings consistent with our determination that the challenged management agreement is void.
NOTES
[1] Although the Notice of Appeal refers to the second order, we may review the first order under Florida Rule of Appellate Procedure 9.110(h).